UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,                    Case No. 09-13809

        Plaintiff,                                    District Judge Sean F. Cox

v.                                                           Magistrate Judge R. Steven Whalen

FRANK J. BLUESTEIN,

        Defendant.
                                         /

**REPORT AND RECOMMENDATION**

Before the Court are Plaintiff United States Securities and Exchange Commission's Motion for Partial Summary Judgment [Doc. #45] and Motion for Permanent Injunction [Doc. #53], which have been referred for Reports and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that both motions be GRANTED.

**I.    FACTS**

Plaintiff United States Securities and Exchange Commission ("SEC") filed suit in this Court on September 28, 2009 under the Securities Act and the Exchange Act, alleging Defendant Frank Bluestein's ("Bluestein") involvement in a $250 million Ponzi scheme. *Complaint* at ¶1.[1] In Count I, Plaintiff alleges that Bluestein violated of §§ 5(a) and 5(c)

---

[1] Attached as an Appendix are a number of supporting documents, including Bluestein's investigative testimony, a declaration from SEC accountant Jean Javorski, and some financial records and investor files. References to these documents are by page number, e.g., App. 5.

-1-

of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c), by selling unregistered securities. In Count II, Plaintiff alleges that Bluestein "intentionally or recklessly engaged in...devices, schemes, and artifices" to defraud, in violation of §§ 17(a)(1) of the Securities Act, 15 U.S.C. §§ 77q(a)(1). In Count III, Plaintiff alleges that Bluestein omitted material facts in selling the securities, in violation of § § 17(a)(2) and (3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2) and (3). In Count IV, Plaintiff made untrue statements and omitted to state material facts in selling the securities, in violation of § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b).

From 2002 to 2007, Bluestein was a registered representative of a broker/dealer, as well as an associated person of a registered investment advisor. Bluestein and his firm sold approximately $74 million of Ed May securities to approximately 800 investors. Ed May was, to put it bluntly, a con artist who devised a massive Ponzi scheme for which he was indicted in 2009. May pled guilty and was sentenced to 16 years in prison. Relevant to the present motions, the SEC alleges that Bluestein violated 15 U.S.C. § 77e by selling unregistered Ed May ("E-M") securities, and that he committed fraud, in violation of 15 U.S.C. §§ 77(q)(A) and 78(j), by failing to disclose to investors that he received "referral fees" from Ed May.

In investigative testimony before the SEC, Bluestein admitted that the E-M securities he sold were not registered (App. 24, 28). Bluestein also admitted that he received a commission, or "referral fee" of 2.5% of the money raised from the sale of May's securities (App. 27). At one point, the commission was raised to 4%. *Id*. He conceded that he did not

tell investors about the commission or fee he was earning (App. 34). Investors also testified that Bluestein never disclosed to them that he was receiving a commission from Ed May (App. 282-283, 285-287, 290, 292, 294).

On October 24, 2012, Bluestein appeared in this Court for a settlement conference, accompanied by his attorney, David Foster. The parties reached a settlement agreement as to the SEC's request for injunctive relief, leaving the monetary issue open. Specifically, Bluestein agreed to a permanent injunction barring him from working in the securities industry for all time. This settlement was placed on the record, and a transcript of the proceedings is filed as Doc. #51. Counsel for the SEC placed the terms on the record as follows:

> "The terms of the bifurcated settlement would be that today the defendant would agree to have entered a permanent injunction against the offenses therein enumerated in the commission's complaint, and also as part and parcel of that would agree that in a follow-on administrative proceeding, a series of industry bars would be entered against him along the lines of language that's been provided to the defendant. The issue of monetary relief would be left open temporarily to give Mr. Bluestein the opportunity to submit financial information to us in a format that we will provide to him so that he can see what information we require.
>
> In connection with the settlement, we will provide him with the language of the injunctive relief in this case as well as the industry bars in the follow-on administrative proceeding." Transcript, 4.

Bluestein testified under oath that he understood that he was consenting "to being permanently barred from the securities industry including all exchanges." Transcript, 5-6. He said that he understood the terms of the settlement, and understood that he would be giving up his right to trial on the SEC's claim for injunctive relief. *Id*. 6-8. He denied that anyone

coerced him or threatened him to agree to the settlement, and acknowledged that he was agreeing to the settlement because he believed it to be in his best interest. *Id*. 8.

## II. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the

record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### B. Permanent Injunctive Relief

In *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 2008 WL 2218427, *7 (E.D.Mich. 2008)(Cox, J.), the Court set forth the standard for granting permanent injunctive relief as follows:

> "'The standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiffs must show actual, as opposed to a likelihood of, success on the merits.' *A.C.L.U. v. Rutherford County,* 2006 WL 2645198 (6th Cir.2006) (citing *Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987)). Thus, the Court must consider four factors when determining to grant or deny Plaintiff's request for a permanent injunction: 1) the Plaintiff's success on the merits; 2) whether Plaintiff may suffer irreparable harm absent the injunction; 3) whether granting the injunction will cause substantial harm to others; 4) the impact of an injunction upon the public interest. *Id.*"

### III. DISCUSSION

#### A. Summary Judgment

Despite being ordered to do so, Bluestein has not filed a response to the motion for summary judgment, and likewise has not responded to the motion for permanent injunction. Therefore, the facts set forth in the motion for summary judgment are deemed undisputed. Fed.R.Civ.P. 56(e)(2)("If a party...fails to properly address another party's assertion of fact as required by Rule 56(c), the court may...consider the fact undisputed for purposes of the motion."). In addition, Rule 56(e)(3) provides that if a party fails to respond, the Court may "grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it." I note that the Plaintiff's assertions of facts are well-supported by its attached exhibits. For this reason alone, summary judgment should be granted on Counts I to IV.

The Plaintiff's exhibits clearly show a *prima facie* Security Act violation, i.e., that no registration statement was on file for the E-M securities, that Bluestein directly or indirectly sold or offered to sell the securities, and that interstate means were used in connection with the offer or sale. *See SEC v. Cavanaugh*, 445 F.3d 105, 111, n. 13 (2nd Cir. 2006). In addition, Bluestein has not met his burden of showing that his sales fell within an exemption from registration. *See SEC v. Ralston Purina Co.*, 346 U.S. 119, 126 (1953). Moreover, apart from the fact that Bluestein has not responded to the summary judgment motion, he has *admitted* that he sold unregistered securities.

As to the fraud claims under § 17(a) of the Securities Act and § 10(b) of the

Exchange Act, the Plaintiff must show that Bluestein directly or indirectly (1) employed any device, scheme or artifice to defraud; (2) obtained money or property by means of an untrue statement of material fact or omission of material fact; and (3) engaged in any trasaction, practice or course of business that operates as a fraud or deceit upon the purchaser. *Basic, Inc. v. Levinson*, 485 U.S. 224, 231 (1988). A misstatement or omission is material if a reasonable investor would consider the fact important in making an investment decision. *Id*. at 231-232.

Again, in his investigative testimony before the SEC, *supra*, Bluestein admitted that he was receiving significant additional compensation, or "referral fees," from Ed May, and that he failed to disclose that fact to investors. This also establishes the requisite element of scienter. *See S.E.C. v. Curshen* , 372 Fed.Appx. 872, 882, 2010 WL 1444910, *8 (10th Cir. 2010)("Once the district court found that Mr. Curshen had been compensated for his promotional activities, there is nothing controversial about drawing the logical conclusion—he knew he was being compensated, and he knew failing to disclose this compensation would mislead those reading his postings by making his opinions seem objective.").

Accordingly, the SEC should be granted summary judgment on Counts I to IV of its complaint, granting both injunctive and monetary relief, in the form of disgorgement and prejudgment interest.

## B. Monetary Relief–Disgorgement

As to disgorgement, in *S.E.C. v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985), the Sixth Circuit reasoned that disgorgement is meant to compel "'a defendant to give up the amount by which he was unjustly enriched' rather than to compensate the victims of fraud.'" *Id. (Citing S.E.C. v. Commonwealth Chemical Securities, Inc.*, 574 F.2d 90, 102 (2d Cir. 1978). Moreover, "[o]nce the SEC has established that a defendant has violated the securities laws, the district court possesses the equitable power to grant disgorgement without inquiring whether, or to what extent, identifiable private parties have been damaged by...fraud." *U.S. S.E.C. v. Midwest Investments, Inc.*, 1996 WL 229783, *7 (6th Cir. 1996) (*citing S.E.C. v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985)). Because disgorgement is an equitable remedy, and because a precise calculation may be impossible it "need only be a reasonable approximation of profits causally connected to the violation." *S.E.C. v. Salyer*, 2010 WL 3283026 at *2 (E.D. Tenn. 2010) (*citing S.E.C. v. Inorganic Recycling Corp.*, 2002 WL 1968341 at *2 (S.D.N.Y. 2002).

The SEC calculates the total fees generated by Bluestein's sale of E-M securities at $3,603,538.90, including $1,383,225 paid by investors to Bluestein's company, Fast Frank, Inc., and $2,220,313.90 in referral fees paid to Bluestein and his company. *See* App. 561-563. I recommend that the Court order disgorgement in the amount of $3,603,538.90.

## C. Monetary Relief–Prejudgment Interest

The SEC also seeks prejudgment interest of $835,932.24. "The decision whether to grant prejudgment interest and the rate used if such interest is granted are matters confided

to the district court's broad discretion, and will not be overturned on appeal absent an abuse of that discretion." *Endico Potatoes, Inc v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1071-72 (2d Cir. 1995). In deciding whether to grant an award of prejudgment interest, a court should consider "(1) the need to fully compensate the wronged party for actual damages suffered; (2) considerations of fairness and the relative equities of the award; (3) the remedial purpose of the statute involved; and/or (4) such other general principles as are deemed relevant by the court." *S.E.C. v. Mohn et al.*, No. 02-74634, 2005 WL 2179340 at *8 (E.D. Mich., Sept. 9, 2005) (*citing Wickham Contracting Co v. Local Union No. 3*, 955 F.2d 831, 833-34 (2d Cir. 1992). By awarding prejudgment interest in addition to disgorgement, a defendant is prevented "from obtaining the benefit of an interest free loan procured through their illegal activity." *S.E.C. v. Gagnon*, 2012 WL 994892, *13 (E.D. Mich. 2012)(Steeh, J.).

The SEC suggest using the "underpayment rate" used by the Internal Revenue Service as the yardstick by which to measure prejudgment interest. *See Gagnon, supra, citing S.E.C. v. First Jersey Sec. Inc.*, 101 F.3d 1450, 1476 (2nd Cir. 1996). Using that rate beginning August, 2007, the last month Bluestein received E-M securities related payments, the SEC calculates prejudgment interest at $838,932.24. I recommend that the request for prejudgment interest in that amount be granted.

### D.    Monetary Relief–Civil Penalty

The SEC also asks the court to impose civil penalties. Pursuant to Section 20(d) of the Securities Act, Section 209(d)(3) of the Exchange Act, and Section 209(e) of the Advisers Act, the SEC may seek civil penalties for the violation of federal securities laws. The criteria

-9-

for imposing a civil penalty is based upon the Court's discretion in light of the facts and circumstances of each case. *Id.* Courts look to the same factors when imposing civil penalties as in the issuance of a permanent injunction. *See S.E.C. v. Brethen*, 1992 WL 420867 at *25 (S.D. Ohio 1992). (*See* Sec. E, *infra*).

Bluestein no doubt merits a civil penalty, but regardless, I do not recommend imposing one. While I recognize the egregiousness of the Bluestein's conduct, I fail to see any marginal benefit in imposing additional financial penalties. "[T]he civil penalty framework is of a 'discretionary nature' and each case has 'its own particular facts and circumstances which determine the appropriate remedy to be imposed'" *S.E.C. v. Opulentica, LLC*, 479 F. Supp.2d 319,331 (S.D.N.Y. 2007) (*citing S.E.C. v. Moran*, 944 F. Supp. 286, 296 (S.D.N.Y. 1996). With disgorgement and prejudgment interest, Bluestein in on the hook for $4,442,471.14. At this point, it is doubtful that he can pay even that much, and at some point the penalties become "piling on."

### E.  Injunctive Relief

Finally, the Court should grant a permanent injunction, not only barring future violations of the Securities Act and the Exchange Act, but permanently barring Bluestein from working in the securities industry. Bluestein's activities were egregious (he was a major participant in a multi-million dollar Ponzi scheme), he knew he was selling unregistered securities and withholding material information from investors, his conduct was recurrent (it continued for a period of five years), and he has provided no assurances against future violations. *See S.E.C. v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980).

Perhaps even more importantly, Bluestein agreed in open court, under oath, to accept the terms of a settlement agreement whereby he would be permanently barred from working in the securities industry, including exchanges. This Court has the equitable power to enforce a settlement agreement, *Brock v. Scheuner Corp.,* 841 F.2d 151, 154 (6th Cir.1988), so long as the remedy is restricted to cases where there is no dispute or ambiguity as to either the entry into, or the terms of the agreement. *Kukla v. National Distillers Products Co.,* 483 F.2d 619, 621 (6th Cir.1973). An agreement to settle is enforceable when "parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing...." *Re/Max International, Inc. V. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001). In this case, the terms of the settlement as to injunctive relief were clearly explained to Bluestein, both at the settlement conference and on the record. There was nothing ambiguous about the terms, i.e., that Bluestein would be forever barred from the securities industry. He swore under oath that he understood and agreed to the terms. Accordingly, Plaintiff's motion for a permanent injunction should be granted.

## IV.   CONCLUSION

For these reasons, I recommend that Plaintiff's Motion for Partial Summary Judgment [Doc. #45] and Motion for Permanent Injunction [Doc. #53] be GRANTED; that Defendant Bluestein be permanently enjoined from future violations of the Securities Act and the Exchange Act and from working in the securities industry; that he be ordered to disgorge his ill-gotten gains in the amount of $3,603,538.90; and that he be ordered to pay prejudgment interest in the amount of $838,932.24.  I further recommend that Defendant Bluestein not be

assessed a civil penalty.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                              **s/ R. Steven Whalen**
                                              R. STEVEN WHALEN
                                              UNITED STATES MAGISTRATE JUDGE

Dated: March 7, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on March 7, 2013.

Frank Bluestein           s/Johnetta M. Curry-Williams
42125 Pellston Dr.          Case Manager
Northville, MI 48167-2413